RECEIVED
SDNY PRO SE OFFICE
2022 MAR 11  PM 2:43

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

Marville A. Bryan,          )
                                   )
        Petitioner,      )
                                   )
        v.              )      Case No. _____
                                   )      SCI Number 00357/2004 (Queens County)
                                   )      A.D. No. 21-01332
                                   )
The People of the State of New York,  )
                                   )
        Respondent.     )
_____ )

## MOTION TO VACATE OR SET ASIDE CONVICTION
## PURSUANT TO 28 U.S.C. § 2254

**COMES NOW**, Petitioner, Marville Bryan ("Petitioner"), proceeding *pro se* and pursuant to the provisions set forth under 28 U.S.C. § 2254, respectfully moves this Honorable Court to vacate or set aside the conviction imposed in the above-styled matter. In support of this motion, Petitioner states the following. Also, at times throughout this motion and in the accompanying memorandum of law in support thereof, Petitioner will allude to the documents presented before the lower court during his C.P.L. § 440.10 proceeding. Those documents are part of a Joint Appendix ("JA-") filed along with this motion.

### I.    INTRODUCTION

On May 13, 2003, Petitioner was wrongfully arrested by detectives from the New York City Police Department[1] and later charged by the State of New York (hereinafter "Respondent") with

---

[1] The lead detective on the case was Theresa A. Troise who, at the time, worked for the New York City Police Department.

two counts of Rape in the First Degree (Penal Law § 130.35[3]), Rape in the Second Degree (Penal Law § 130.30[3]), and four counts of Sexual Abuse in the Second Degree (Penal Law § 130.60[2]). At the time these charges were filed, other than the complainant's accusation[2] that Petitioner raped her—an accusation that Petitioner has vehemently denied, no credible evidence was presented showing that Petitioner had ever engaged in any form of sexual activity with the complainant or with anyone else for that matter.[3]

Petitioner, who was older than eighteen years old at the time these rapes were alleged to have occurred, was accused of engaging in unlawful sexual intercourse with the complainant on more than one occasion.  Petitioner, however, has denied ever engaging in any form of sexual activity or having any sexual contact with the complainant.  There was no DNA evidence or any other evidence for that matter (physical or circumstantial) to corroborate that Petitioner had ever engaged in sexual intercourse with the complainant.

Furthermore, even though Respondent has relied heavily on the complainant's medical records as proof that the complainant was raped by Petitioner, nothing in the complainant's medical records indicate that she was sexually assaulted by Petitioner, or that she was even raped. Instead, what the medical records revealed is that the complainant had engaged in sexual

---

[2] The complainant in this case was a twelve-year-old girl who was the sister of Petitioner's then girlfriend.  The complainant's mother, Doreen Ramekie, also knew Petitioner well.  As discussed below, when Ms. Ramekie learned that her daughter had falsely accused Petitioner of raping her, Ms. Ramekie responded angrily by beating the complainant which resulted in the complainant being taken to the hospital where she was treated for her injuries.

[3] Crucial to Petitioner's assertion that he is factually innocent of the rape charges filed against him is the fact that he was also accused of raping four other young girls ranging from ages eleven to eighteen years old.  This information is outlined in the affidavit of probable cause filed by Detective A. Troise. (JA-16 to 17 & 52 to 53).  However, despite the seriousness of Detective Troise's allegation which essentially categorized Petitioner as a serial rapist, the identity of none of the other four girls who Petitioner supposedly raped is not known, nor is there any evidence as to whether they even exist.  No investigative work went into ascertaining the veracity of Detective Troise's allegation that Petitioner had also raped four other young girls—allegations that were part of Detective Troise's sworn affidavit.  Yet Respondent has argued, and continues to argue, that Petitioner's claim that his attorney was ineffective in representing is meritless.

intercourse. Nothing more. And nothing in the record shows that the person who the complainant had sex with was Petitioner.

As noted at footnote 3, *infra*, the lead detective in the case, Detective Theresa A. Troise, filed an affidavit of probable cause which led to Petitioner's arrest and indictment. In the affidavit, Detective Troise falsely stated under oath that Petitioner was responsible for raping *four other young girls* separate from the complainant. The ages of the four other girls ranged from eleven to eighteen years old. Importantly, there is no evidence or information of who these four girls are. More importantly, this crucial omission was completely ignored by Petitioner's attorney who was more interested in getting Petitioner to plead to rape. Also, Detective Troise's sworn statement that *Petitioner had also raped four other young girls* was never brought up or pursued by the prosecution during the entire time the case remain pending which is a testament to the absurdity of the rape charges brought against Petitioner. No one, including Petitioner's attorney, had bothered to address this serious accusation—an accusation that was part of a sworn document that led to Petitioner's arrest, indictment, and subsequent conviction. Yet the Respondent in this case insists that Petitioner's rape conviction was not only validly obtained, but it is also justified.

Needless to say, given the dearth of physical and circumstantial evidence presented in this case to substantiate the rape allegations leveled against Petitioner, coupled with the blatantly false accusation by Detective Troise that Petitioner had also raped four other young girls, and the fact that the complainant's mother, after learning that her daughter had falsely accused Petitioner of rape, violently attacked her,[4] none of this information made its way into Petitioner's defense

---

[4] The complainant's injuries were later reported to New York's Administration for Children's Services. (JA-55, Copy of correspondence sent to Petitioner by the Administration of Children's Services).

strategy which is an undeniable testament to the substandard level of legal representation that Petitioner was afforded. (*See* footnote 2, *supra*).[5]

As indicated, the only evidence of rape presented against Petitioner was the complainant's bald allegations that she was sexually assaulted by him on several occasions over a period of approximately ten months and that on one occasion, an eighteen-year-old female observed him and her (the complainant) engaging in sexual intercourse. But like all the other information presented in this case masquerading as fact or evidence, no corroborating statement from this fictional eighteen-year-old female was ever presented. Yet the Respondent continues to rely on this dubious piece of information as basis for why Petitioner's conviction should remain untouched.

After nearly two decades since the start of this case, there is still no evidence to support *any* of the rape allegations made against Petitioner. Meanwhile, Petitioner's liberty was unlawfully taken away from him for a crime that he did not commit. Moreover, he was ultimately removed from the United States and permanently separated from his family all based on a crime that he did not commit.[6] Given those circumstances, no argument about procedural restriction can preclude or limit this Court's ability to correct the egregious miscarriage of justice that has occurred in this case.[7]

---

[5] Also absent from the record is any corroborating statement by the eighteen-year-old girl who, according to Detective Troise, had allegedly observed Petitioner engaging in sexual intercourse with the complainant on at least one occasion.
[6] Living in Jamaica and labeled a rapist and a deportee has made life very difficult for Petitioner who, today, is still struggling to get by. His unlawful rape conviction has been a perennial obstacle in his way, rearing its head at every major turn in his life, and a hindrance working against every effort he makes to build a meaningful quality of life for himself. Had it not been for the support of his family living in the United States, Petitioner would have been homeless a long time ago, or perhaps worse, dead.

[7] This statement is in response to the Respondent's argument (JA-66) and the lower court's finding (JA-84) that Petitioner's actual innocence claim is unreviewable because "he was involuntarily deported to Jamaica" and therefore "is not within th[e] Court's jurisdiction." (JA-98). What this argument is essentially saying is that Petitioner should simply live with the injustice that he suffered. If that argument ultimately proves to be the case, it is an awful precedent to set for many reasons. And it goes against our principle of decency and our precept of being an evolved society.

In December of 2019, Petitioner petitioned the New York State Supreme Court for habeas relief in a motion filed under N.Y. C.P.L. Section 440.10(1)(b), arguing that he is factually innocent of the crime of rape, and that his attorney was ineffective in representing him by convincing him to abandon his desire to proceed to trial and instead plead guilty to an offense that he did not commit notwithstanding the fact that there is no evidence showing that he in fact raped the complainant.[8] In response to Petitioner's claims, Respondent argued that, (a) Petitioner waited too late to present his claim;[9] (b) the court has no jurisdiction over the subject matter of his § 440.10 motion or to examine the merits of his actual innocence claim because he is no longer in the country;[10] (c) the evidence against Petitioner is sufficient to support his conviction;[11] and (d) Petitioner cannot prove that he was denied effective legal representation because his attorney negotiated an extremely favorable plea deal on his behalf.[12]

Petitioner, who is a Jamaican national, is currently living in Jamaica. As stated, he was removed from the United States for a crime that he did not commit, and he has since been struggling to survive in a society that frowns upon deportees and persons labeled a rapist which

---

[8] As explained in the accompanying memorandum of law, Petitioner's attorney did not conduct *any* investigative work into the rape allegations leveled against Petitioner. And that is a fact as can be gleaned from the record of this case. Instead, counsel simply concluded that Petitioner was guilty and focused his efforts on convincing Petitioner to abandon his desire to proceed to trial, explaining to Petitioner that if he were to go to trial, he would lose because he is black, and because of that, the jury would take the complainant's word over his and convict him. Counsel also explained that once convicted, Petitioner would be looking at a minimum of twenty-five years in prison. Faced with such a grim outlook, Petitioner was rendered hopeless and believed that his only alternative was to plead guilty.

[9] This argument ignores the fact that there is no time limitation for filing a § 440.10 motion.

[10] This averment clearly suggests that the injustice that Petitioner suffered should remain untouched simply because he is no longer in the country which makes absolutely no sense because it is that very injustice that caused Petitioner to no longer be in the country.

[11] To this day, other than the complainant's bald statement, no one knows what the actual evidence against Petitioner is. The complainant's medical record alone does not confirm whether she was raped or, for that matter, whether she was raped by Petitioner.

[12] This argument is demonstrably specious because it is predicated on the notion that Petitioner is actually guilty of the crimes that he was charged with, and he therefore came out ahead because his attorney fought admirably for him. That is simply not the case. And the record shows that.

means that life for him has been nothing short of difficult.  Nevertheless, he is hopeful that one day all of his effort to survive and clear his name will result in him finding the relief that he and his family seeks.

    With that being said, this habeas petition, despite the intervening years between the time of Petitioner's conviction and the time when he first petitioned the Supreme Court of the State of New York (Queens County) in December of 2019 to vacate his judgment of conviction pursuant to § 440.10 of the Criminal Procedure Law on the grounds that he is actually innocent of rape and that he was denied his right to effective assistance of counsel, is being pursued for one reason only—that is, to correct a grave injustice that occurred in this case and restore Petitioner's liberty.[13]

    Petitioner was falsely accused of repeatedly raping a twelve-year-old girl over a period of ten months, and he was also falsely accused of raping an eleven-year-old girl, a fourteen-year-old girl, a fifteen-year-old girl, and an eighteen-year-old female.  These are all extremely serious allegations leveled against Petitioner.  And they are allegations that the State would not have agreed to trade for a six-month prison sentence—unless, of course, the State was only interested in obtaining a conviction rather than seeking the truth.

    Throughout the entire process of Petitioner's § 440.10 proceeding, the justification put forth by Respondent for why Petitioner's rape conviction should remain untouched is the fact that he pled guilty after his attorney negotiated an extremely favorable plea deal on his behalf.  But as stated, the very guilty plea upon which Respondent stand is the result of Petitioner's attorney's deficient performance.  And it therefore cannot sensibly be used as justification to sustain Petitioner's conviction.  In fact, the law is abundantly clear that in a case like this, Respondent

---

[13] Cf. Fadiga v. Attorney General, 488 F.3d 142 n.23 (3rd Cir. 2006) (observing that "unlike in everyday civil proceedings, the *liberty* of an individual is at stake 'in deportation proceedings.'") (emphasis added).

cannot rely on a conviction that was unlawfully obtained to justify the continued existence of the conviction.

As it relates to Petitioner's § 440.10 motion, this Court is being asked to vet the evidence presented against Petitioner (whatever that evidence is) and ascertain whether there is any credible or reliable basis upon which to deduce that Petitioner was rightfully convicted of rape as Respondent has argued. The reviewing court below, unfortunately, got it wrong. The court appeared to be more interested in the procedural aspect of Petitioner's § 440.10 motion rather than to analyze the facts and circumstances surrounding Petitioner's conviction to determine whether his claim of actual innocence has any merit.

Now that Petitioner is before the federal tribunal, he is hopeful that he will be afforded a fair and meaningful examination of the facts and record upon which his rape conviction rests, and that in the end, justice and truth will prevail. Cf. Obergefell v. Hodges, 135 S. Ct. 2584 (2015) (explaining that "[u]nder the Constitution, judges have power to say what the law is, not what it should be.").

Finally, it is worth reiterating that Petitioner is challenging his conviction as a matter of law and based on his attorney's ineffectiveness in violation of his Sixth Amendment right to effective legal representation. The crux of his challenge is based on his assertion of actual innocence. These points were raised by Petitioner in his § 440.10 motion before the New York Supreme Court, (JA-25 to 49), and they are outlined in the accompanied Memorandum of Law in support of this motion.

## II.   JURISDICTION

This Court has jurisdiction to hear Petitioner's motion to vacate or set aside his conviction under 28 U.S.C. §§ 2254(b)(2) and 2254(d)(1). Also, this motion is being filed within one year of Petitioner's application for leave to appeal the New York State Supreme Court's denial of his motion pursuant to C.P.L. § 440.10. *See* Keaton v. United States, 2016 U.S. App. LEXIS 24368, *16 (11th Cir. 2016) ("The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one-year statute of limitations for filing a § 2255 motion.").

## III.   BACKGROUND AND PROCEDURAL HISTORY

The relevant procedural history of this case is as follows. Beginning from August 31, 2002 to May 8, 2003, the complainant, Desirlee Haliburton, claimed that she was sexually assaulted by Petitioner on four separate occasions. This allegation, according to the record, was made to law enforcement quite some time after the alleged assault purportedly occurred. Thereafter, a criminal investigation against Petitioner was opened. As indicated, the investigation was headed by New York Detective, Theresa A. Troise (hereinafter "Detective Troise").

Based on an interview of the complainant, Detective Troise concluded the following, which was filed in an affidavit of probable cause with the Criminal Court of New York on May 14, 2003. (JA-16 to 17). Detective Troise concluded that, (a) "between January 15, 2003 and 12:01 AM and May 8, 2003 at 11:59 PM at various locations in Queens County, New York, ... [Petitioner] engaged in sexual intercourse with a female who was less than eleven years old, [he] being eighteen years old or more, did engage in sexual intercourse *with another person less than fifteen years old,* [and that he] subject [yet] *another person to sexual contact and that person was less than fourteen years old*" (emphasis added);  (b) "on August 31, 2002, between 8:00 PM and 10:10 PM in the vicinity of Jamaica Avenue and Parsons, County of Queens, [Petitioner] touched the

complainant's breasts with his hands"; (c) "between January 15, 2003 and January 31, 2003 between 8:00 PM and 10:00 PM at 139-11 225 Street, County of Queens, [Petitioner] touched the complainant's breast with his hands and put his penis inside her vagina"; (d) "between April 14, 2003 and April 28, 2003 between 8:00 PM and 10:00 PM at 230 Place and 149 Avenue, County of Queens, [Petitioner] touched the complainant's breast with his hands and put his penis inside her vagina"; and (e) "on May 8, 2003 at 133-33 125 Street, County of Queens, between 8:00 PM and 10:00 PM, [Petitioner] touched the complainant's breasts with his hands and put his penis inside her vagina." (quotes taken from Detective Troise's affidavit of probable cause).

Thereafter, formal criminal charges were filed against Petitioner in the Criminal Court of the City of New York, Queens County.  Petitioner was charged with two-counts of rape in the first degree pursuant to PL § 130.35-3; rape in the second degree pursuant to PL § 130.30-1; and four-counts of sexual abuse in the second degree pursuant to PL § 130.60-2.

An arrest warrant was subsequently issued against Petitioner which led to his arrest on May 13, 2003.  The case was later transferred to the Supreme Court of the State of New York (Queens County) for disposition. (JA-19).  Petitioner was later released on bail pending the outcome of the case.

In May of 2003, Petitioner's mother hired an attorney named Michael Marley to represent Petitioner.  Petitioner later met with Mr. Marley to discuss his case.  In doing so, Petitioner explained that the allegations of sexual assault made against him are completely false.  Specifically, Petitioner explained that he had never engaged in any form of sexual activity with the complainant or any form of unlawful sexual activity with any other female; he had never touched the complainant inappropriately; and he certainly did not sexually assault the complainant or any other female.  Notwithstanding these averments of innocence made by Petitioner, Mr.

Marley insisted that allegations of rape are extremely difficult to defend against and that Petitioner should seriously consider accepting a plea in order to avoid spending decades of his life in prison. Petitioner, on the other hand, was adamant about to taking the case to trial and defend his innocence. He is innocent, and that was all that mattered to him at the time.

For the next several months, various plea offers were presented to Petitioner by Respondent, all of which were conveyed to him through his attorney. However, on each occasion offers were made, Petitioner rejected them while continuing to insist that he is innocent and wanted to take the case to trial. But despite Petitioner's continuous assertion that he is innocent and his insistence on taking the case to trial to defend his innocence, Mr. Marley continued to persist in his efforts to convince Petitioner to forgo trial and instead plead guilty. On more than one occasion, Mr. Marley told Petitioner that despite his claim of innocence, the fact that he is black and have been charged with rape, a jury would likely overlook the facts of the case and find a way to convict him because they tend to believe that there is validity to the charge of rape whenever the perpetrator is black. And according to Mr. Marley, a conviction for rape meant that Petitioner would spend at least 25 years of his life in prison because under New York State law, a twenty-five-year prison sentence is the least amount of time he could receive on a rape conviction.

Ultimately, a plea offer that required Petitioner to plead guilty to second degree rape in return for a six-month prison sentence was tendered by Respondent who, prior to that, had begun the negotiation process with offering Petitioner a plea of ten to fifteen years in prison. The six months plea offer, like the previous plea offers that were made, was communicated to Petitioner through his attorney who insisted that a six-months prison sentence for second degree rape was an excellent deal that Petitioner could not afford to reject because, according to counsel, if Petitioner did in fact proceed to trial, he would lose and ultimately be faced with a minimum sentence of 25 years.

Confused about how to proceed, Petitioner ultimately became convinced that despite his innocence, if he persisted in going to trial, he would be convicted. In his confusion, he decided to consult with his family as to how he should proceed. Together, Petitioner and his family concluded that rather than him risk going to trial with an attorney who had repeatedly demonstrated his lack of confidence in Petitioner's innocence and was more concerned with Petitioner pleading guilty, the most sensible solution to the dilemma that Petitioner faced was to accept Respondent's plea offer and begin the process of putting the ordeal behind him.[14] Still, for Petitioner and his family, accepting guilt that Petitioner had committed the egregious act of rape, especially the rape of a twelve year old girl when knowing that Petitioner had done no such thing, was an extremely difficult decision to make, but a decision that Petitioner and his family believed was necessary in light of the circumstance that they were up against which was driven primarily by Mr. Marley's lack of zealousness in providing Petitioner with an adequate and meaningful defense, along with Mr. Marley's repeated assertions that proceeding to trial meant that Petitioner would likely be convicted regardless of *what* the facts and evidence say, and ultimately receive a sentence of a minimum of 25 years in prison. For Petitioner and his family, agreeing to plead guilty to a crime that Petitioner did not commit was an extremely difficult leap to make. But discussions between Petitioner and his attorney led them (including Petitioner) to arrive at the conclusion that taking the case to trial meant that a finding of guilt would likely occur regardless of what the facts of the case represents. And on that basis, Petitioner would ultimately be sent to prison for the next two and a half decades for a crime that he did not commit. This realization was extremely horrifying. As a result, they decided that it was best for Petitioner to follow the advice of his attorney and

---

[14] Even though the family considered firing Mr. Marley, they were forced to stick with him because they did not have the financial resource to hire a new attorney. Neither Petitioner nor his family were aware that Petitioner could fire Mr. Marley and petition the court to appoint him an attorney.

plead guilty to second degree rape rather than to proceed to trial because, in their view, that decision was clearly the lesser of the two evils.

At no time during the pre-trial stage did Mr. Marley conduct any investigation into whether Petitioner's assertion of actual innocence had any merit. For example, the affidavit of probable cause filed by Detective Troise clearly states that Petitioner, in addition to raping the complainant, also raped four other young girls—an accusation that was clearly false and would have been enough to undermine the integrity of the detectives' investigation of the case brought against Petitioner. Moreover, the complainant's own mother demonstrated, through her actions, that she believed that her daughter had falsely accused Petitioner of rape, and she felt so strongly that her daughter had lied that she reacted violently, which resulted in the complainant being taken to the hospital. That information would have also contributed to Petitioner's defense because, in addition to the fact that there is no evidence that Petitioner committed rape, evidence that the complainant's own mother felt strongly that her daughter had lied, coupled with Detective Troise's false accusation, were compelling enough to warrant an acquittal at trial. Equally crucial to Petitioner's defense is the fact that there was no physical evidence to corroborate that Petitioner sexually assaulted the complainant, or that an eighteen-year-old young lady supposedly observed Petitioner engaging in sexual intercourse with the complainant. None of these important pieces of information was ever vetted by Petitioner's attorney. Yet Respondent is arguing that Petitioner did not receive inadequate legal representation. (JA-68 to 80).

Prior to Petitioner pleading guilty (or even afterwards), Mr. Marley never explained to him that pleading guilty to second degree rape meant that he would face mandatory removal from the United States. In fact, Petitioner had no knowledge whatsoever that there would be any

immigration consequences attached to his conviction for second degree rape. While this claim is no longer being pursued by Petitioner, it nevertheless is worth mentioning.

As indicated, Petitioner decided to accept Respondent's plea offer based on the advice of his attorney. The plea offer included Petitioner accepting guilt to second degree rape in return for a six-month prison sentence, dismissal of the remaining charges, and him deciding to waive his right to appeal his conviction. (JA-59).

On February 9, 2004 in the Supreme Court of the State of New York, Petitioner entered a guilty plea to one-count of rape in the second degree. (JA-83). Later on, on March 29, 2004, he was sentenced to six months' imprisonment and ten years' probation. Id. Because of the plea waiver clause, no appeal was filed by Petitioner. (JA-71).

After completing his six-months sentence, on August 11, 2004, Petitioner was taken into custody by immigration officials and placed in removal proceedings. (JA-61 & 93). Because of his conviction for second degree rape, Petitioner was deemed removable and ineligible for any relief from removal.

On October 5, 2004, an Immigration Judge ("IJ") determined that Petitioner was removable as charged and that he was ineligible for any form of relief and, accordingly, ordered him removed from the United States. Petitioner timely appealed the IJ's decision to the Board of Immigration Appeals ("BIA").

In an Order filed on February 14, 2005, the BIA affirmed the IJ's decision. (JA-63). Shortly thereafter, he was removed from the United States. (JA-94).

On December 22, 2019, Petitioner, proceeding *pro se*, moved to vacate his conviction in a motion filed under § 440.10 of the Criminal Procedure Law on the grounds that he is actually

innocent of the offense of rape that he was convicted of, and that he was denied his right to effective assistance of counsel.

In a motion dated March 13, 2020, Respondent opposed Petitioner's § 440.10 motion, arguing that the motion should be summarily dismissed because Petitioner was involuntarily deported from the United States and therefore was outside of the court's jurisdiction and could not obey the mandate of the court. (JA-66 to 81). Respondent also argued that Petitioner's claims of ineffectiveness regarding his attorney's failure to investigate the case and counsel coercing him to plead guilty to rape should be denied pursuant to C.P.L. § 440.30(4)(b) and (d) because Petitioner failed to provide any sworn allegations, (JA-72),[15] or evidentiary proof, substantiating all the essential facts to support his claims. This argument, however, is misleading because at the time Petitioner filed his § 440.10 motion, he also filed a "Notice of Motion," (JA-1), along with an "Affirmation ... In Support of His Section 440.10 Motion" (JA-2 to 13) which he submitted under penalty of perjury pursuant to 28 U.S.C. § 1746.

On July 30, 2020, the court issued a decision and order summarily denying Petitioner's motion to vacate his judgment of conviction. (JA-82 to 86). Despite Petitioner's constitutional challenge and averment of actual innocence, the court denied the § 440.10 motion on the grounds that Petitioner had been deported and was outside the jurisdiction of the United States, ignoring altogether the fact that Petitioner is attacking the very conviction that led to his removal from the United States.

---

[15] In a different breadth, Respondent argued that the affidavit that Petitioner provided is "self-serving" and "is the sole source of his claims," ignoring altogether the blatantly false sworn affidavit provided by Detective Troise which became part of the record.

On January 27, 2020, Petitioner filed a motion with the Supreme Court of the States of New York Appellate Division seeking leave to appeal from the lower court's July 30, 2020 decision denying his § 440.10 motion to vacate his conviction.

In a response motion dated March 22, 2021, Respondent urged the Supreme Court to affirm the lower court's decision. (JA-91 to 109).

That said, Petitioner now petitions this Court for habeas relief on the grounds that he is factually innocent of the charge of rape in any form, and that he was denied his Sixth Amendment right to effective assistance of counsel.

## IV.   CONCLUSION

WHEREFORE, for the all the reasons stated herein and in the Memorandum of Law in Support of Petitioner's § 2254 motion that is filed along with this motion, Petitioner respectfully requests that the Court grant his prayer for relief in this habeas matter by granting his § 2254 motion.

Petitioner further requests that the Court grant him all other relief to which he may be entitled in this habeas proceeding.

Dated: February 24, 2022

Respectfully submitted,

Marville A. Bryan (*Pro Se*)
c/o Beverly Johnson[16]
748 East 102 Street
Brooklyn, New York 11236
(347) 636-5530
Hayden.kimonio24@gmail.com [17]

---

[16] Beverly Johnson is Petitioner's mother.

[17] The email address listed here belongs to Petitioner.

# **CERTIFICATE OF SERVICE**

I hereby certify that on February 24, 2022, a true and correct copy of the attached MOTION

TO VACATE OR SET ASIDE CONVICTION PURSUANT TO 28 U.S.C. SECTION 2254 was

sent via First Class mail to the following party:

> MELINDA KATZ
> District Attorney
> Queens County
> 125-01 Queens Boulevard
> Kew Gardens, New York 11415-1568

/s/ *[signature]*
Marville A. Bryan (*Pro Se*)
c/o Beverly Johnson
748 East 102nd Street
Brooklyn, New York 11236

Beverly C. Johnson
748 East 102 Street
Brooklyn, New York 11236
Email: bevjohnson8817@gmail.com
Phone: (347) 636-5530

February 24, 2022

United States District Court
Southern District of New York
Office of the Clerk
500 Pearl Street
New York, NY 10007

**RE**:   Marville A. Bryan v. The People of the State of New York
*Federal Case Number Not Yet Assigned*
People v. Bryan, Marville A. (*Petitioner*)
Case No. SCI-00357-2004 (New York Supreme Court)
Lower Ct. 2003QN021344

To The Court's Clerk:

My name is Beverly Johnson.  I am submitting the enclosed documents on behalf of Marville A. Bryan, the Petitioner in the above-referenced matter, who is also my son.

Because Marville is living in Jamaica, I am assisting him with making sure that documents that he prepares for filing in the above-referenced matter are sent to the Court in a timely manner, and to also ensure that correspondence from the Court gets to him.  That is the extent of my involvement in this matter.

Also enclosed is a money order in the amount of $5 to cover the filing fee for this matter.  I was told that $5 is the correct filing fee.  If I am incorrect, please write or call me with the correct information.

Thank you for your assistance and consideration in this matter.

Very truly yours,

Beverly Johnson



U.S. POSTAGE PAID
BROOKLYN, NY
P-BROOKLY
MAR 01 '22
**$13.65**
R2305H127838-09

1020   10007

RECEIVED
MAR 09 2022
CLERK'S OFFICE
S.D.N.Y.

USPS
3PS



CERTIFIED MAIL

7021 1970 0001 6669 3276

RECEIVED
MAR 11 2022
PRO SE OFFICE



United States District Court
Southern District of New York
Office of the Clerk
500 Pearl Street
New York, NY 10007

CEIVE

%Beverly C. Johnson
Merville Bryan
748 E. 102 Street
Brooklyn NY 11236